UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUSTIN DOMONIC BELL,

                    Petitioner,

        v.

KAREN ARNOLD,

                    Respondent.

CASE NO. 2:25-cv-01320-BHS-GJL

REPORT AND RECOMMENDATION

Noting Date: January 6, 2026

The District Court referred this action to United States Magistrate Judge Grady J. Leupold. Petitioner Justin D. Bell, proceeding *pro se*, has filed a federal Petition for writ of habeas corpus ("Petition") under 28 U.S.C. § 2254, seeking relief from his state court conviction and sentence. Dkt. 9. The Petition contains four grounds for relief.

After considering the record, the Court concludes that Petitioner failed to properly exhaust his state court remedies as to Grounds 1 and 2 in the Petition. Because Petitioner is now barred from pursuing state court remedies, Petitioner has also procedurally defaulted on these Grounds. Further, the Court finds that the state courts' adjudication of Grounds 3 and 4 was not contrary to, or an unreasonable application of, clearly established federal law.

REPORT AND RECOMMENDATION - 1

Therefore, the Court **RECOMMENDS** the federal habeas Petition (Dkt. 9) be **DENIED on all Grounds with prejudice** and a certificate of appealability not be issued.

## I.     BACKGROUND

A.     Factual Background

On October 15, 2021, in the Superior Court of Washington for Snohomish County ("trial court"), a jury found Petitioner guilty of first-degree assault (count 1) and drive-by shooting (count 2). Dkt. 15-1, Ex. 1 at 2 (judgment and sentence). The trial court subsequently imposed a 171-month term of imprisonment. *Id.* at 7. The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> Justin Bell shot Freddie Brooks several times on December 14, 2017. Earlier that day, Brooks had argued with Bell, a coworker, over a carpooling payment Brooks owed Bell. As reported by another coworker, their argument escalated and "g[ot] kind of pushy." They were told to leave their employer's building and they did, exchanging blows in the parking lot. When the fight ended, the two went their separate ways. Brooks headed to a corner store and then a bus stop with his girlfriend, Briann Jenkins, while Bell went toward his car.

> As Jenkins and Brooks crossed the street to the bus stop, Jenkins heard gunshots, quickly ran toward a nearby Value Village store, and hid behind a car. Witnesses later described hearing six to eight shots. When Jenkins looked back, Brooks was crawling on the ground, hit by several bullets. A passing car transported him to the hospital, where he was treated for several potentially life-threatening bullet wounds. He recovered successfully.

> Numerous individuals testified to seeing the shooting and the events surrounding it at trial. One witness, a passenger in a nearby car, testified that he heard gunfire while stopped at a light. Looking in the direction of the gunshots, he saw a black four-door sedan driving erratically, swerving through traffic and cutting off other cars.[1] This witness called the police to provide updates as his girlfriend followed the car. A recording of his 911 call in which he describes the first three letters of the license plate, BTB or BGB, was admitted at trial. Another witness who observed the license plate wrote down the last four numbers: 9767. Bell's registered vehicle was a 2017 Hyundai Elantra with the license plate BGB9767.

> Eyewitnesses who managed to get a look at the shooter were able to match his age and race roughly with Bell's. One witness, peering into the sedan from less

REPORT AND RECOMMENDATION - 2

than a car-length away, managed to get a quick glimpse and confirmed his age and race. Another witness was able only to get a sense of his race.

Other evidence confirmed the origin of the gunshots. Most significantly, the State introduced video footage depicting the shooting and Brooks's collapse onto the ground.2 This footage was then supported by eyewitness and forensic testimony and evidence. One witness, the passenger in a car located behind a vehicle he identified as a dark-colored Kia Sorento, saw the shooter's hand stretching out of the vehicle holding a gun. Still another witness, perhaps 10 or 15 feet away from the shooter's car, saw gunfire come from the driver's side window. The police used lasers to reconstruct the flight path of the fired bullets and concluded that they originated in the street.

Bell owned a firearm, a 9 mm caliber Kahr. Casings and bullet holes found at the scene of the shooting matched this caliber. In February 2018, Bell called the Marysville Police Department to report this firearm stolen. According to the police officer who took the call, Bell said he had reached out "in case something was to be done with that pistol" and demonstrated concern that "if a crime [occurred] or the pistol was used inappropriately that it could be associated with him."

The State initially charged Bell with first degree assault. It later added a count of drive-by shooting. During jury selection, Bell requested that jurors not wear face masks that obstructed their noses and mouths, a request the trial court denied. After hearing testimony, the jury convicted Bell of first degree assault with a firearm enhancement and drive-by shooting. The court sentenced Bell to 171 months in prison, the low end of the standard range, using an offender score that included both crimes.

Dkt. 15-1, Ex. 9 at 1–4.

B.      Procedural Background

    1.      *Direct Appeal*

On October 24, 2021, the trial court sentenced Petitioner to a total term of imprisonment of 171 months. Dkt. 15-1, Ex. 1 at 7. Represented by counsel, Petitioner raised three grounds for review in a challenge to his conviction and sentence. *See* Dkt. 15-1, Ex. 2 at 1–2. In a published opinion issued on January 30, 2023, the state court of appeals affirmed the trial court, finding no reversible error. Dkt. 15-1, Ex. 5 at 1. On a motion for reconsideration (Dkt. 15-1, Ex. 6), the state court of appeals issued a new opinion, again finding no reversible error. Dkt. 15-1, Ex. 9 at 1.

REPORT AND RECOMMENDATION - 3

Petitioner sought discretionary review by the Washington Supreme Court ("state supreme court"). Dkt. 15-1, Ex. 10. On October 3, 2023, the state supreme court denied Petitioner's petition for review without comment. Dkt. 15-1, Ex. 11. The state court of appeals issued its mandate on October 19, 2023. Dkt. 15-1, Ex. 12.

2.      *Personal Restraint Petitions*

On June 26, 2024, Petitioner filed a *pro se* Personal Restraint Petition ("PRP") in the state court of appeals. Dkt. 15-1, Ex. 13. The state court of appeals dismissed the PRP on August 21, 2024. Dkt. 15-1, Ex. 14. The order dismissing the PRP became final on October 2, 2024. Dkt. 15-1, Ex. 15. On October 28, 2024, Petitioner filed a corrected PRP in the state court of appeals. Dkt. 15-1, Ex. 16. The state court of appeals dismissed Petitioner's corrected PRP as untimely. Dkt. 15-1, Ex. 17 at 1.

Petitioner then sought discretionary review by the state supreme court. Dkt. 15-1, Ex. 18. On April 16, 2025, a commissioner of the state supreme court denied Petitioner's Motion for Discretionary Review. Dkt. 15-1, Ex. 19. The state court of appeals issued its mandate on July 11, 2025. Dkt. 15-1, Ex. 20.

3.      *Federal Petition*

On July 14, 2025, Petitioner filed the instant Petition raising four grounds for relief. Dkts. 1, 9. On October 23, 2025, Respondent filed, and served on Petitioner, an Answer. Dkt. 14. Finally, on November 19, 2025, Petitioner filed a Traverse. Dkt. 16. Thus, the Petition is ripe for consideration.

//

//

//

REPORT AND RECOMMENDATION - 4

## II.   DISCUSSION

In the Petition, Petitioner raises the following four grounds for relief:

1.   The trial court reduced the promised time for jury selection without allowing the attorneys sufficient time to adjust to the change. Dkt. 9 at 5.

2.   The trial court "explicitly permitted dramatic changes to the usual *voir dire* procedure," such as changes including remote jury selection. *Id.* at 7.

3.   The trial court violated Petitioner's "right" by requiring prospective jurors to wear face masks. *Id.* at 8.

4.   The evidence at trial was insufficient to convict Petitioner. *Id.* at 10.

In the Answer, Respondent asserts that Petitioner failed to exhaust Grounds 1 and 2, and these Grounds are now barred from federal review. Dkt. 14 at 11–16. Additionally, Respondent maintains that the state courts' adjudication of Grounds 3 and 4 was not contrary to, or an unreasonable application of, clearly established federal law. *Id*. at 16–20. As exhaustion and procedural default are threshold matters, the Court will discuss Grounds 1 and 2 before addressing the remaining Grounds.

A.   Exhaustion and Procedural Default (Grounds 1 and 2)

Respondent contends that Petitioner failed to exhaust Grounds 1 and 2 raised in the Petition. These Grounds are, therefore, procedurally barred from federal review.

1.   *Exhaustion of State Remedies*

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one

REPORT AND RECOMMENDATION - 5

complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (stating petitioner "fairly presented" the claim to the state even though the state court did not reach the argument on the merits). The petitioner does not satisfy this obligation merely because all the facts necessary to support the federal claim were before the state courts or simply because the petitioner made a somewhat similar state law claim. *Duncan*, 513 U.S. at 365–66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)).

To the contrary, Petitioner must include a reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). Petitioner bears the burden of proving he has exhausted available state remedies and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

a.      *Grounds Raised in State and Federal Proceedings*

In his direct appeal, Petitioner raised the following claims to the state court of appeals:

1.      The trial court violated Petitioner's rights when it denied his request that jurors wear clear face shields so he could choose jurors and present his arguments to them at trial.

2.      The drive-by shooting conviction constituted double jeopardy.

3.      The trial court erred in sentencing Petitioner when it used an incorrect offender score.

Dkt. 15-1, Ex 2 at 23.

REPORT AND RECOMMENDATION - 6

Following the state court of appeals' decision on direct appeal, Petitioner filed a petition for discretionary review with the state supreme court and raised the same claims as in his appeal in the lower court. *See* Dkt. 15-1, Ex. 10 at 2–3.

In his first PRP, filed *pro se*, Petitioner submitted the following as his only ground for relief: "[Physical] altercation not natural action plus no show on court, discount self from the whole situation. Jury decision altered mask. On film person not reco[gn]izable an attempt to gain Judgment." Dkt. 15-1, Ex. 13 at 4.

After the state court of appeals denied Petitioner's PRP, he filed a second PRP, stating that the evidence against him was insufficient to prove he fired the gun in his crimes of conviction. Dkt. 15-1, Ex. 16 at 3. The state court of appeals denied the second PRP, so Petitioner sought discretionary review with the state supreme court on the following issues:

1.  The state court of appeals wrongly denied his PRPs, violating his right to Due Process.

2.  The evidence to convict him was insufficient.

Dkt. 15-1, Ex. 18 at 2.

In the instant Petition, Petitioner raises four grounds for relief, set forth in detail above. *See supra*, Part II at 5. As relevant here, Petitioner asserts the following with respect to Grounds 1 and 2:

1.  Ground 1: The trial court reduced the promised time for jury selection without allowing the attorneys to sufficient time to adjust to the change.

2.  Ground 2: The trial court "explicitly permitted dramatic changes to the usual *voir dire* procedure," such as changes including remote jury selection.

Dkt. 9.

//

//

REPORT AND RECOMMENDATION - 7

b.    *Grounds 1 and 2 Are Not Properly Exhausted*

In the Answer, Respondent asserts that Petitioner never presented Grounds 1 and 2 to the state court of appeals or the state supreme court. Dkt. 14 at 12. Upon review, the Court agrees that Petitioner has failed to properly exhaust Grounds 1 and 2.

The record reveals that Petitioner did not raise these claims with any court. Dkt. 15-1, Exs. 2, 10, 13, 16, 18. On direct appeal, Petitioner, through counsel, failed to argue to the state court of appeals and the state supreme court that the trial court improperly reduced jury selection time and altered the usual *voir dire* procedure.[1]  *See* Dkt. 15-1, Exs. 2, 10. And the state court of appeals' opinion on direct appeal did not address these issues when it affirmed the trial court and denied all of Petitioner's claims. Dkt. 15-1, Ex. 9.

It is even clearer that Petitioner did not raise Grounds 1 and 2 in his PRPs. *See* Dkt. 15-1, Exs. 13, 16. His first PRP was extremely difficult to decipher, while his second PRP only raised a claim concerning the insufficiency of the evidence used to convict him. *Id.* In his petition for review before the state supreme court, Petitioner raised a Due Process claim and reiterated his insufficiency of the evidence claim. Dkt. 15-1, Ex. 18.

Petitioner did not give the state courts a full and fair opportunity to determine if federal constitutional violations occurred in the circumstances surrounding the time allotment of the jury and the *voir dire*. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992)

---

[1] While Petitioner did not raise Grounds 1 and 2 on direct appeal, the state court of appeals mentioned in the context of Petitioner's claim about masked jurors that the trial court offered Petitioner more time for jury selection than normally allotted, but he did not use all his time. Dkt. 15-1, Ex. 9 at 13 (stating that the trial court "indicated a willingness to offer more time of jury selection than would otherwise have been allotted.").

REPORT AND RECOMMENDATION - 8

(finding claims were unexhausted when they were not raised on every level of direct review). In the Traverse, Petitioner does not address Respondent's arguments regarding exhaustion of Grounds 1 and 2. Dkt. 16 at 1–2. Therefore, Grounds 1 and 2 were not properly exhausted.

2.    *Procedural Default*

Grounds 1 and 2 are procedurally defaulted. Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Id.* at 1230–31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Boerckel*, 526 U.S. at 845.

Importantly, under Washington State law, the state court of appeals will not consider a second or successive personal restraint petition ("PRP") unless a petitioner certifies he has not filed a previous petition on similar grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See* RCW 10.73.140.

Petitioner has not presented facts which could show good cause for his failure to raise Grounds 1 and 2 in his collateral attack on his conviction and sentence. Therefore, Grounds 1 and 2 in the Petition are also subject to an implied procedural bar because these Grounds would be "prohibited by an independent, adequate, and mandatory rule of state procedure, RCW 10.73.140, making a return to state court futile." *See Bolar v. Luna*, No. 05-CV-2029-TSZ, 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

REPORT AND RECOMMENDATION - 9

Petitioner would be precluded from asserting Grounds 1 and 2 in the state courts. Thus, these Grounds are procedurally defaulted in federal court. *See Coleman*, 501 U.S. at 731; *Franklin*, 290 F.3d at 1231 (holding a federal habeas claim is procedurally defaulted when it is clear a petitioner has "no further recourse in state courts.").

### 3.    *Overcoming Procedural Default*

The procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some objective factor external to him being prevented from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). And only in an "extraordinary case" may the habeas court grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice." *Murray*, 477 U.S. at 495.

Here, Petitioner has not made any arguments concerning cause or prejudice regarding Grounds 1 and 2 in the Petition. He has not demonstrated some objective factor external to him prevented him from complying with the State's procedural bar rule. Because Petitioner has not shown cause, the Court need not reach the issue of prejudice. *See Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991) (stating a finding of lack of cause eliminates the need to discuss whether the petitioner was prejudiced).

### 4.    *Conclusion*

In sum, there is no evidence Petitioner exhausted the state court remedies to the highest court for Grounds 1 and 2. As Petitioner bears the burden of proving he exhausted the available

REPORT AND RECOMMENDATION - 10

state court remedies and as there is no evidence showing Petitioner gave the state courts a full and fair opportunity to determine if a federal constitutional violation occurred, Grounds 1 and 2 were not properly exhausted. Moreover, these Grounds are procedurally defaulted. As Petitioner has not overcome the procedural default, the Court **RECOMMENDS** Grounds 1 and 2 of the Petition be **DISMISSED with prejudice**.

B.      Merits Review (Grounds 3 and 4)

Respondent claims that Grounds 3 and 4 of the Petition were fairly presented to the state courts and, therefore, can be addressed on the merits. Dkt. 14 at 16–20. The Court will set forth the standard of review under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") before addressing each ground in turn.

1.      *Legal Standard – AEDPA Merits Review*

Under the AEDPA, a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

REPORT AND RECOMMENDATION - 11

also be unreasonable." *Id*. at 411; *see also Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

2.    *Ground 3*

In Ground 3, Petitioner contends that the trial court violated his "right" by requiring prospective jurors to wear face masks.[2] Dkt. 9 at 8. Respondent counters that the United States

---

[2] Petitioner never explicitly stated what "right" was violated when prospective jurors were required to wear face masks. Dkt. 9 at 12. The Court, however, construes Petitioner's arguments as raising a Sixth Amendment claim regarding his right to an impartial jury because that is the claim he raised on direct appeal. *See* Dkt. 15-1, Ex. 2 at 23.

REPORT AND RECOMMENDATION - 12

Supreme Court "has not held requiring prospective jurors to wear face masks violates a defendant's right to an impartial jury" under the Sixth Amendment. Dkt. 14 at 2. Respondent further argues that the state court of appeals reasonably applied the law when it "thoroughly examined the record and reasonably determined 'that the trial court did not abuse its discretion when, during a pandemic, it required jurors to wear face masks during jury selection.'" *Id.* at 18 (quoting Dkt. 15-1, Ex. 9 at 15).

The state court of appeals' rejection of Petitioner's claim reflects a reasonable application of governing Supreme Court precedent. The Supreme Court has never held that a criminal defendant's Sixth Amendment right is violated when potential jurors are masked. *See United States v. Thompson*, 543 F. Supp. 3d 1156, 1164 (D.N.M. 2021) ("[T]he Court is aware of no authority, nor has [the defendant] cited any, holding that the Sixth Amendment right to an impartial jury or Due Process demand that the defendant have unimpeded visual access to prospective jurors' facial expressions during jury selection.") (citation omitted). On the contrary, the Supreme Court has held that exceptions to the Sixth Amendment are constitutionally permissible when "necessary to further an important public policy." *Maryland v. Craig*, 497 U.S. 836, 850 (1990) (holding that the Sixth Amendment was not violated when a child abuse victim was allowed to testify at trial by one-way closed-circuit television outside of the defendant's physical presence); *United States v. Rothenberg*, No. 20-266, 2024 U.S. Dist. LEXIS 39510, at *9–14 (N.D. Cal. Mar. 6, 2024) (relying on *Craig* in holding that masking at trial during the COVID-19 pandemic passes constitutional muster).

In the state court of appeals' thorough analysis, it found the trial court properly exercised its broad discretion to conduct jury selection when it required the prospective jurors to wear a mask. Dkt. 15-1, Ex. 9 at 6. It further noted that the trial court was adhering to state-wide

REPORT AND RECOMMENDATION - 13

protocols to combat the COVID-19 pandemic when it required jurors to wear masks. *Id.* at 7. Finally, the state court of appeals considered the legal landscape and determined that courts around the country implemented similar mask mandates for jurors during the COVID-19 pandemic. *Id.* at 10. And while Petitioner raised this issue on direct appeal with the state supreme court, it did not review his petition for review. Dkt. 15-1, Ex. 11. Accordingly, the state court of appeals' rejection of Petitioner's Sixth Amendment claim was not contrary to, or an unreasonable application of, clearly established law as set forth by the United States Supreme Court.

Based on the above, the Court **RECOMMENDS** that Ground 3 of the Petition be **DENIED with prejudice**.

3.    *Ground 4*

Petitioner asserts in Ground 4 that his conviction was based on insufficient evidence. Dkt. 9 at 10. In response, Respondent counters that the state court of appeals reasonably determined that the prosecution presented sufficient evidence to convict Petitioner. Dkt. 14 at 18–19.

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v. California*, 491 U.S. 263, 265 (1989). Due process claims challenging the sufficiency of the evidence are evaluated under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court stated in *Jackson* that the relevant question in reviewing a claim of insufficient evidence is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Under this standard, it is the responsibility of the trier of fact, and

REPORT AND RECOMMENDATION - 14

not a reviewing court, to decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

Sufficiency of the evidence claims are subject to a second layer of judicial deference on federal habeas review. Specifically, the Supreme Court has held that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (citing *Cavazos*, 565 U.S. at 2).

The state court of appeals rejected Petitioner's insufficiency of the evidence claim on direct appeal, explaining its conclusions as follows:

> Finally, Bell challenges whether the evidence admitted at trial was sufficient to support his conviction. We conclude that it was.
>
> Evidence is sufficient if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Because credibility determinations are for the trier of fact—in this case, the jury—appellate courts "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).
>
> Here, the evidence was sufficient for the jury to convict. Bell had fought with Brooks earlier in the day. He owned a gun of the same caliber used in the shooting, a gun he later claimed he had lost. The witnesses' descriptions of the make, model, and license plate of the shooter's car very closely matched Bell's car. And eyewitness testimony of the shooter's appearance, though very vague, roughly described Bell. Bell's arguments amount to the assertion that his conviction requires particular forms of evidence—namely, testimony from his victim and witnesses testifying that they recognized him as the shooter—to stand. This is incorrect. We conclude that the evidence was sufficient.

Dkt. 15-1, Ex. 9 at 26–27.

REPORT AND RECOMMENDATION - 15

Petitioner fails to demonstrate that the state court of appeals' adjudication of his insufficiency of the evidence claim was objectively unreasonable. In the Traverse, Petitioner argues that he did not possess a firearm, and he was not present at the scene of the crime. Dkt. 16 at 4. He goes on to state that the alleged shooter was not recognizable because he was wearing a hood. *Id.*

This Court's review of the trial transcript confirms the state court of appeals' description of the evidence presented at trial. Witness testimony indicated Petitioner had an altercation with the victim the day of the shooting. Dkt. 15-1, Ex. 21 at 311–15. Trial evidence also supported the notion that Petitioner had a gun the day of the shooting, which was the same caliber as the gun used in the shooting. *Id.* at 321–22. After the shooting occurred, Petitioner claimed his gun was stolen. Dkt. 15-1, Ex. 22 at 464, 467, 505. Petitioner's car make, model, and license plate appeared to match those of the shooter's car. Dkt. 15-1, Ex. 21 at 334–39, 344–49, 355–57, 407–12. Finally, witness testimony about the shooter's physical characteristics generally matched the Petitioner's physical description. Dkt. 15-1, Ex. 22 at 392–93.

Petitioner's regurgitation of his arguments concerning the identity of the shooter to support his insufficiency of the evidence claim is unavailing. The state court of appeals reasonably applied *Jackson* and concluded that, viewing the facts in light most favorable to the state, and crediting the jury's determinations, the evidence was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Petitioner was guilty of both charged offenses.

For these reasons, the Court **RECOMMENDS** that Ground 4 of the Petition be **DENIED with prejudice**.

//

//

REPORT AND RECOMMENDATION - 16

### III.       EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. Further, the Supreme Court in *Shinn* held that when reviewing a federal habeas petition under 28 U.S.C. § 2254, the federal court may not consider any facts beyond the factual record presented to the state post-conviction relief court – unless one of the limited exceptions of 28 U.S.C. § 2254(e)(2) applies. *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022).

The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, Petitioner's claims may be resolved on the existing state court record.

### IV.       CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason

could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to the Petition.

## V.    CONCLUSION

For the reasons stated above, the Court concludes Petitioner has not shown he is entitled to relief under 28 U.S.C. § 2254. Additionally, an evidentiary hearing is not required. Therefore, the Court **RECOMMENDS** the Petition (Dkt. 9) be **DENIED with prejudice** and a certificate of appealability not be issued.

//

//

//

//

//

//

//

//

//

//

//

//

REPORT AND RECOMMENDATION - 18

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on January 6, 2026, as noted in the caption.

Dated this 22nd day of December, 2025.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19